## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| CLARENCE JOSEPH JASON, | CIVIL DOCKET |
| Plaintiff | |
| | |
| VERSUS | NO. 15-607 |
| | |
| JAMES LEBLANC, ET AL., | SECTION: "E" (5) |
| Defendants | |

## ORDER AND REASONS

Before the Court is a motion for summary judgment based on qualified immunity filed by Defendants James LeBlanc, Secretary of the Louisiana Department of Public Safety and Corrections (DPSC), Robert Tanner, current Warden of the Rayburn Correctional Center (RCC), Lt. Shane Ladner, and Sgt. Master Bradley Pierce.[1] Plaintiff, Clarence Joseph Jason opposes this motion.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

On February 18, 2015, Plaintiff filed his initial complaint regarding an incident that occurred at the Rayburn Correctional Center ("RCC") on August 27, 2014.[3] Plaintiff filed an amended complaint on July 6, 2015,[4] and a Schulter Reply Brief on September 8, 2015.[5] It is uncontested that Plaintiff suffered injuries when he was hit from behind with a swing blade originally issued by Defendant Pierce to Bernard Turner, another inmate at RCC.[6] At some point after the swing blade was issued to Turner, Turner abandoned the tool on the prison yard and went inside the prison to watch TV.[7] At this point, another

---

[1] R. Doc. 51.
[2] R. Doc. 59.
[3] R. Doc. 1.
[4] R. Doc. 22.
[5] R. Doc. 27.
[6] R. Doc. 51-1 at ¶¶ 30, 36; R. Doc. 59-14 at ¶¶ 30, 36.
[7] R. Doc. 51-1 at ¶ 33; R. Doc. 59-14 at ¶ 33.

1

inmate, Victor Cooper, picked up the swing blade and used it to attack the Plaintiff.[8] Plaintiff alleges claims pursuant to Title 42, United States Code, Section 1983 against each of the Defendants in their individual capacities for violations of his Eighth Amendment rights and against Defendants LeBlanc and Tanner for their failure train and supervise.[9]

On December 27, 2016, Defendants filed their motion for summary judgment based on qualified immunity.[10] On January 3, 2017, the Court granted Plaintiff's motion for an extension of time to file a response to the Defendants' motion for summary judgment.[11] On January 24, 2017, Plaintiff filed his response in opposition to the Defendants' motion.[12] In his opposition, Plaintiff requests that the Court either deny the Defendants' motion or defer ruling until discovery has occurred.[13]

## LEGAL STANDARD

I. Summary Judgment

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[14] "An issue is material if its resolution could affect the outcome of the action."[15] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing

---

[8] R. Doc. 51-1 at ¶¶ 35, 37; R. Doc. 59-15 at ¶¶ 35, 37.
[9] R. Docs. 1, 22. Defendants' motion to dismiss claims against them in their official capacities, R. Doc. 23, was granted on August 24, 2015. R. Doc. 26.
[10] R. Doc. 51.
[11] R. Doc. 57.
[12] R. Doc. 59.
[13] R. Doc. 59, at 26. The Plaintiff previously filed a motion to compel discovery pursuant to Rule 37(a)(3)(B) of the Federal Rules of Civil Procedure. R. Doc. 48. After oral argument on the motion to compel before Magistrate Judge North, the parties agreed that a stay of discovery is appropriate until Defendants' pending motion for summary judgment on the issue of qualified immunity is resolved. R. Doc. 58.
[14] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[15] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).

the evidence."[16] All reasonable inferences are drawn in favor of the nonmoving party.[17] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[18]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[19] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[20]

If the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[21] When proceeding under the first option, if the

---

[16] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[17] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[18] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[19] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).
[20] *Celotex*, 477 U.S. at 322–24.
[21] *Id.* at 331–32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986), and requiring the movants to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority

nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[22] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[23] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[24] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[25] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[26]

"[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the

---

and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).
[22] *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).
[23] *Celotex*, 477 U.S. at 332–33.
[24] *Id.*
[25] *Celotex*, 477 U.S. at 332–33, 333 n.3.
[26] *Id.*; *see also First National Bank of Arizona*, 391 U.S at 289.

record and to articulate the precise manner in which that evidence supports the claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[27]

## II. Qualified Immunity

"The doctrine of qualified immunity shields 'government officials performing discretionary functions … from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[28]

Although qualified immunity is nominally an affirmative defense, "the plaintiff has the burden to negate the defense once properly raised."[29]

> The defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority. Once the defendant has done so, the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law.[30]

In resolving questions of qualified immunity at the summary judgment stage, courts engage in a two-pronged inquiry.[31] "The court must decide whether the plaintiff has alleged a violation of a constitutional right and whether that right was 'clearly established' at the time of the incident."[32]

---

[27] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).
[28] *Luna v. Mullenix*, 773 F.3d 712, 718 (5th Cir. 2014) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).
[29] *Brumfield*, 551 F.3d at 326. *See also Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).
[30] *Id.* (quoting *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 866, 872 (5th Cir. 1997) ("We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs.")).
[31] *See Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014).
[32] *Orr v. Copeland*, 844 F.3d 484, 492 (5th Cir. 2016).

"[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm [the plaintiff] has alleged and that defeat a qualified immunity with equal specificity."[33] "Therefore, even where the qualified immunity defense is raised by motion for summary judgment, the Court 'must first determine whether the allegations in [the] complaint are sufficient to negate [the] assertions of qualified immunity.'"[34] This "demands more than bald allegations and conclusory statements."[35] A plaintiff "must allege facts specifically focusing on the conduct of [the defendant] which caused his injury."[36]

"The qualified immunity defense is appropriately resolved at the summary judgment stage when (1) a plaintiff has established that the defendant has engaged in the complained-of conduct or (2) the court 'skip[s], for the moment, over ... still-contested matters to consider an issue that would moot their effect if proved.'"[37] "If resolution of [qualified immunity] in the summary judgment proceeding turns on what the defendant actually did, rather than on whether the defendant is immunized from liability ..., and if there are conflicting versions of his conduct, one of which would establish and the other defeat liability," then summary judgment is not appropriate.[38] Although summary judgment ultimately may be appropriate based on a plaintiff's inability to prove the facts essential to recovery, this "has nothing to do with the qualified immunity defense."[39]

---

[33] *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).
[34] *Hatcher v. Bement*, 2015 WL 1511106, at *7 (N.D. Tex. Apr. 3, 2015) (quoting *Fleming v. Tunica*, 497 F. App'x 381, 388 (5th Cir. 2012) (alterations in original).
[35] *Id.* (quoting *Wicks v. Miss. State Employment Servs.*, 41 F.3d 991, 995 (5th Cir. 1995)).
[36] *Wicks*, 41 F.3d at 995.
[37] *Hatcher*, 2015 WL 1511106, at *7 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) and citing *Haverda v. Hays County*, 723 F.3d 586, 599 (5th Cir. 2013)) (alterations in original).
[38] *Haverda*, 723 F.3d at 599 (quoting *Barker v. Norman*, 651 F.2d 1107, 1123-24 (5th Cir. 1981)).
[39] *Id.*

"One of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive."[40] Consequently, the Fifth Circuit "has established a careful procedure under which a district court may defer its qualified immunity ruling if further factual development is necessary to ascertain the availability of that defense."[41] The Fifth Circuit has explained that "a district court must first find 'that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity.'"[42] "Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity."[43] "*After* the district court finds the plaintiff has so pled, if the court remains 'unable to rule on the immunity defense without further clarification of the facts,' it may issue a discovery order 'narrowly tailored to uncover only those facts needed to rule on the immunity claim.'"[44] The Fifth Circuit has further explained that "[a]n order that simultaneously withholds ruling on a qualified immunity defense while failing to constrain discovery to develop claimed immunity is by definition not narrowly tailored."[45]

## LAW AND ANALYSIS

Plaintiff filed the instant suit *in forma pauperis* seeking relief from the Defendants under 42 U.S.C. § 1983 for violations of the Eighth Amendment's prohibition of cruel and unusual punishments.    Plaintiff sued Defendants Secretary James LeBlanc, Warden

---

[40] *Backe*, 691 F.3d at 648 (citing *Helton v. Clements*, 787 F.2d 1016, 1017 (5th Cir. 1986).
[41] *Id.*
[42] *Id.* (citations omitted).
[43] *Id.*
[44] *Id.* (quoting *Lion Boulos v. Wilson*, 834 F.2d 504, 507-08 (5th Cir. 1987).
[45] *Id.* at 649.

Robert Tanner, Lt. Shane Ladner, and Corrections Sergeant Master Bradley Pierce, in their individual capacities pursuant to 42 U.S.C. § 1983 for violations of his Eighth Amendment rights. Plaintiff alleges the Defendants violated his right to reasonably safe conditions of confinement when the Defendants provided other inmates with unsupervised access to tools which could be used as dangerous weapons.

In resolving questions of qualified immunity at the summary judgment stage, courts engage in a two-pronged inquiry.[46] "The court must decide whether the plaintiff has alleged a violation of a constitutional right and whether that right was 'clearly established' at the time of the incident."[47] The court may address the questions in either order.[48]

The Court will first address the second prong: whether the right that was allegedly violated was clearly established at the time of the incident. The Supreme Court has "'repeatedly told courts . . . not to define clearly established law at a high level of generality.'"[49] At the same time, "this does not mean that 'a case directly on point' is required."[50] Rather, "clearly established" means that the "contours of the right must be sufficiently clear that a reasonable officer would understand that what he was doing violates that right."[51] In *Farmer*, the Supreme Court explained that the Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing,

---

[46] *See Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014).
[47] *Orr v. Copeland*, 844 F.3d 484, 492 (5th Cir. 2016).
[48] *Pearson*, 555 U.S. at 227.
[49] *Morgan v. Swanson*, 659 F.3d 359, 372 (quoting *Ashcroft v. al-Kidd*, --- U.S. ----, 131 S.Ct. 2074, 2084 (2011)).
[50] *Id.* (quoting *al-Kidd*, 131 S.Ct. at 2083).
[51] *Thompson v. Upshur Cnty., Texas*, 245 F.3d 447, 457 (5th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"[52] Further, "Several courts . . . have noted that the Eighth Amendment may be violated when prison officials permit inmate access to objects that could be used as weapons, especially when this conduct is accompanied by a lack of adequate supervision over the inmates."[53] The Court finds that the Plaintiff's Eighth Amendment right allegedly violated by the Defendants was clearly established at the time of the incident.

With respect to the first prong of the qualified immunity standard – *i.e.* whether the Defendants violated Plaintiff's constitutional rights – the Supreme Court has explained, "The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones, and it is now settled that 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'"[54] "In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners."[55] As explained above, the Eighth Amendment also imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates."[56] To succeed on a claim for a failure to protect, an inmate must show that (1) he was incarcerated under conditions posing a substantial risk of harm; and (2) a prison official was deliberately indifferent to this risk.[57] "A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his

---

[52] *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).
[53] *Iwanski v. Oklahmoa Dept. of Corrections*, 1999 WL 1188836, at *4 (10th Cir. Dec. 14, 1999) (collecting cases).
[54] *Farmer*, 511 U.S. at 832 (citations omitted).
[55] *Id.* (citations omitted).
[56] *Id.* (citations omitted).
[57] *Anderson v. Wilkinson*, 440 F. App'x 379, 381 (5th Cir. 2011) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

conduct demonstrates deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety."[58] "To know of' a risk, an official must be subjectively aware of the risk: that is, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[59] "This issue is a question of fact."[60] "Finally, even if a prison official was subjectively aware of the risk, he may be found free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'"[61]

"The deliberate indifference standard is 'an extremely high standard to meet.'"[62] The Fifth Circuit has "declined to find deliberate indifference where an official '*should have*' inferred a risk posed to an inmate, requiring proof that the official, '*did* draw such an inference."[63] "Nevertheless, an inmate does not have to produce direct evidence of an official's knowledge about the risk; he may rely on circumstantial evidence to demonstrate such knowledge."[64]

Defendants argue the Plaintiff has not alleged a violation of a constitutional right because, as interpreted by the Defendants, "the plaintiff is alleging that giving tools to inmates that could be used as weapons was a practice that created a dangerous condition."[65] In addition, according to Defendants, the incident at issue was an unpreventable, isolated incident and therefore, Plaintiff's Eighth Amendment right to protection from inmate-on-inmate attacks was not violated.[66] In response, Plaintiff states

---

[58] *Id.* (citing *Farmer*, 511 U.S. at 837).
[59] *Id.* (internal citations and quotations omitted).
[60] *Id.* (quoting *Farmer*, 511 U.S. at 837).
[61] *Id.* (quoting *Farmer*, 511 U.S. at 844).
[62] *Id.* (quoting *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)).
[63] *Id.* (emphasis in original) (citations omitted).
[64] *Id.* (citations omitted).
[65] R. Doc. 51-2 at 10.
[66] *Id.*

that he is not claiming that issuing tools to inmates for work is unconstitutional.[67] Instead, Plaintiff argues that issuing tools that can be used as weapons to inmates without direct supervision is dangerous.[68]

In order to show a violation of his Eighth Amendment right, Plaintiff must first demonstrate that he was incarcerated under conditions posing a substantial risk of serious harm.[69] "Whether a risk is substantial and the threatened harm is serious represents an objective test[.]"[70] As explained above, "Several courts . . . have noted that the Eighth Amendment may be violated when prison officials permit inmate access to objects that could be used as weapons, especially when this conduct is accompanied by a lack of adequate supervision over the inmates."[71] In addition, similar to facts in *Goka v. Bobbitt*, "the risk to inmate safety from misuse of maintenance and other tools as weapons is evident on the fact of the tool control policy[.]"[72] Plaintiff attaches a copy of RCC's Tool Control Policy to his opposition to the Defendants' motion for summary judgment.[73] RCC's Tool Control Policy, which has the stated purpose of establishing "procedures that will ensure adequate control of tools," explicitly states that "[o]ffenders may only use certain tools," referred to as "Restricted Tools", "because of their potential security risk, within the fenced compound under *direct* supervision of staff."[74] RCC's Tool Control Policy further defines restricted tools as "implements that can be used to fabricate weapons, or that can be used as weapons; or that can be used to facilitate an escape."[75]

---

[67] R. Doc. 59 at 14.
[68] *Id.*
[69] *Anderson*, 440 F. App'x at 381 (5th Cir. 2011) (citing *Farmer*, 511 U.S. at 834).
[70] *Hinojosa v. Livingston*, 807 F.3d 657, 665 (5th Cir. 2015) (citations omitted).
[71] *Iwanski*, 1999 WL 1188836, at *4 (collecting cases).
[72] 862. F.2d 646, 652 (7th Cir. 1988).
[73] R. Doc. 59-3.
[74] *Id.* at 1, 3 (emphasis added)
[75] *Id.* at 3.

11

Although the Tool Control Policy does not include a sling blade in its non-exhaustive list of examples of restricted tools, the Court finds that it is clear the sling blade used in the assault at issue is a paradigmatic example of a restricted tool pursuant to RCC's own policy.

As the sling blade at issue is clearly a restricted tool, RCC's own policy mandates that inmates only be allowed to use the tool when under direct supervision. Defendants argue that offenders working on the Wind Yard "are monitored via video monitors by the Unit Key Officer and Lieutenant using the camera outside of the buildings" and "a Lieutenant and Unit Key Officer periodically make rounds on the yard to assess the status of all of the offenders including those working inside the buildings and outside on the yard."[76] The Plaintiff argues it is clear there was no direct supervision in this instance. First, Plaintiff points to the affidavit of Darryl Mizell, the Chief Investigator for RCC, in which Mizell states there is no camera surveillance monitoring of the Wind recreational yard and that the surveillance cameras in place are only intended to prevent any escape and therefore are only directed at the perimeter fence.[77] In addition, Defendants admit that "After Sgt. Pierce issued the swing blade to offender Turner, he had no knowledge that offender Bernard Turner left his assignment or violated the prison disciplinary rules regarding the issued equipment."[78] Defendants also admit it is undisputed that "[w]hile the swing blade was unattended on the yard, another offender picked it up and used it to attack the plaintiff."[79]

---

[76] R. Doc. 51-1 at ¶¶ 8-9.
[77] R. Doc. 59-14 at ¶ 8 (citing R. Doc. 51-4, at ¶¶ 20-21).
[78] R. Doc. 51-1 at ¶ 34.
[79] *Id.* at ¶ 35.

Had there been *direct* supervision, as required by RCC's own Tool Control Policy, there would not have been an opportunity for an inmate to leave the swing blade unattended on the yard, leave the yard altogether, or for another inmate to pick up the abandoned tool and attack the Plaintiff. Since it is an undisputed that this occurred, the Court finds the prison did not follow its own policies with respect to the supervision of restricted tools and, thus, the Plaintiff has satisfied his burden in demonstrating that he was incarcerated under conditions posing a substantial risk of serious harm.

Second, in order to defeat Defendants' motion for summary judgment on the basis of qualified immunity, Plaintiff must demonstrate that a genuine issue of material fact exists as to the second element of the failure to protect analysis – i.e. that the defendant prison officials were deliberately indifferent to his need for protection.[80] As explained above, a prison official is "deliberately indifferent" to a risk when he "knows of and disregards an excessive risk to inmate health or safety."[81] An officer's awareness of the risk is evaluated subjectively.[82] The Court must address this issue at it pertains to each individual defendant. Without allowing the Plaintiff to conduct discovery on this issue, the Court finds that it is unable to rule on whether each individual Defendant is entitled to immunity.[83] Greater detail explaining how inmates were ultimately left unsupervised while in possession of restricted tools is needed for the Court to determine which, if any, Defendants, are entitled to qualified immunity. To further elaborate on this point, it is apparent to the Court that there are at least three possible, and mutually-exclusive, explanations as to how and why this potential violation of the Plaintiff's Eighth

---

[80] *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) (citations and internal quotation marks omitted).
[81] *Anderson*, 440 F. App'x at 381.
[82] *Longoria*, 473 F.3d at 592-93.
[83] *See, e.g. Lion Boulos*, 834 F.2d at 508.

Amendment rights occurred: (1) the RCC Tool Control Policy drafted by Warden Tanner which requires direct supervision when inmates are issued restricted tools was never actually implemented; (2) the RCC Tool Control Policy was implemented but the prison officials responsible for actually effectuating the policy were never properly trained on how to comply with the direct supervision requirements of the policy; and (3) the RCC Tool Control Policy was implemented and, although the prison officials responsible were properly trained on how to effectuate the policy, they failed to do so. Determining which scenario led to the incident at issue in Plaintiff's complaint is a question of fact that can be resolved only with additional information gained through discovery.[84] The Court finds this information is essential to its determination of whether any of the Defendants is entitled to qualified immunity.[85] It is uncontested that on August 27, 2014, Defendant Pierce issued a swing blade to another inmate, Bernard Turner, to cut grass in the Wind Yard.[86] It is also uncontested that the Plaintiff was hit from behind with the sling blade causing severe lacerations.[87] While these facts are not in dispute, due to the lack of relevant information, information that only the Defendants have access to, the Court is unable to identify which individuals engaged in the specific conduct leading to the lack of direct supervision of inmates with access to restricted tools.[88] The Court is not able to ascertain whether, for example, Defendant Pierce neglected to follow proper procedure or whether another guard, who was assigned to the Wind Yard providing the necessary direct supervision, was not in his or her assigned location. Accordingly, the Court finds limited discovery regarding the roles of each of the Defendants, the policies actually in

---

[84] *See Dyer v. City of Mesquite, Texas*, 2017 WL 118811, at *10 (N.D. Tex. Jan. 12, 2017).
[85] *Id.*
[86] R. Doc. 51-1 at ¶ 30; R. Doc. 59-14 at ¶ 30.
[87] R. Doc. 51-1 at ¶ 36; R. Doc. 59-14 at ¶ 36.
[88] *See, e.g., Dyer*, 2017 WL 118811, at *10.

14

place at the time of the incident regarding the issuance of restricted tools, the training provided, and other relevant information related to the Defendants' subjective knowledge of the risk is necessary to rule on the Defendants' invocations of qualified immunity.

## CONCLUSION

For the foregoing reasons;

**IT IS ORDERED** that the parties shall meet or confer before **Monday, October 9, 2017** to discuss the scope, method, and timing of the limited discovery necessary to address the Defendants' invocation of qualified immunity. If the parties reach agreement, they shall file a joint motion with a proposed order on or before **Tuesday, October 10, 2017**. If the parties do not timely file a joint motion with an agreed upon proposed order, the Court shall hold a status conference on **Friday, October 13, 2017** at **3:00 p.m** at which time the Court will determine the scope, method, and timing of the limited discovery.

**IT IS FURTHER ORDERED** that the Defendants' Motion for Summary Judgment on the Basis on Qualified Immunity [89] is **DENIED WITHOUT PREJUDICE,** and may be refiled after the completion of the limited discovery ordered above.

**New Orleans, Louisiana, this 25th day of September, 2017.**

*[Signature: Susie Morgan]*
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[89] R. Doc. 51.